# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS ALMONTE, # 61800-050, a/k/a ABU HAFS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 13-cv-1132-MJR ) |
| HENRY RIVAS, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at the United States Penitentiary at Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also asserts claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and includes a state law claim for intentional infliction of emotional distress. (Doc. 1, pp. 1, 7). Plaintiff is serving a 240-month sentence for conspiracy (in the United States) to murder individuals outside the United States. *United States v. Carlos E. Almonte*, Case No. 11-cr-132-DRD (D.N.J., Doc. 55, April 15, 2013).[1]

In his complaint, Plaintiff names a total of sixty-seven individual Defendants, alleging that they infringed on his constitutional rights by adopting and enforcing a policy that

---

[1] The Court has consulted the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) for information regarding Plaintiff's conviction and sentence. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

bans Muslim inmates in the Communications Management Unit ("CMU") from engaging in group prayer and from calling the Adhan (the Muslim call to prayer). The named Defendants include numerous former[2] and current[3] Federal Bureau of Prisons ("BOP") officials as well as numerous former[4] and current[5] Marion officials and employees. As relief, Plaintiff seeks a preliminary and permanent injunction to prevent enforcement of the bans on group prayer and on calling the Adhan, as well as compensatory and punitive damages.

Plaintiff explains that he is a Sunni Muslim, and is currently confined in Marion's CMU (Doc. 1, p. 16). The CMU houses a number of Muslim inmates who are "deemed to require additional monitoring of their communications" both with persons outside the prison, and with other inmates in the CMU. *Id*. They are subject to constant audio and video surveillance with hidden and visible cameras and microphones. The CMU inmates are allowed out of their

---

[2] According to the complaint, the following Defendants are *former* BOP officials: Harley Lappin (BOP Director), D. Scott Dodrill (Assistant Director of Correctional Programs Division), and Mike Nalley (BOP North Central Regional Director).

[3] The following Defendants are *current* Bureau of Prisons officials: Charles Samuels (BOP Director), Brian K. Davis (Assistant Director of Correctional Programs Division), Leslie Smith (Chief Intelligence Section/Counterterrorism Unit), Thomas R. Kane (Central Office, BOP), Amber Nelson (BOP North Central Regional Executive), Paul M. Laird (BOP North Central Regional Director), D. Schiavone (BOP Senior Intelligence Analyst/Counterterrorism Unit), John Bair, April Cruitt, William Falls, J. Simmons, T. Capaldo, Stephen Colt (all BOP Intelligence Analysts/Counterterrorism Unit), and Keith Harrison (BOP North Central Regional Chaplain).

[4] The following Defendants are *former* Marion officials: Wendy J. Roal (Warden), Lisa J. Hollingsworth (Warden), John Parent (Associate Warden of Programs), Steve Julian (Associate Warden of Operations), Paul Kelly (CMU Manager), Jeff Baney (Executive Assistant), Luke M. Ormandy (Captain), and Lawrence Howard (Captain).

[5] The following Defendants are *current* Marion officials: J.S. Walton (Warden), Dan Sproul (Associate Warden of Operations), Calvin Johnson (Associate Warden of Programs), Steven V. Cardona (CMU Unit Manager), M. Neumann (CMU Case Manager Coordinator), G. Burgess (CMU Case Manager), Henry Rivas (Intelligence Research Specialist), E. Garcia (Captain), Robert Roloff (Supervisory Chaplain), Katherine Siereveld (Supervisory Attorney Advisor), M. Lewis (Counselor), E. Murphy (Case Manager), E. Edmister (Counselor), the following Lieutenants: Lockridge, K. Wells, Malcolm, F. Van Dyver, B. Tolson, J. Mash, J. Sims, Mercer Patterson, M. Deloia, and L. Fones, and the following Correctional Officers: Franklin Dougherty, G. Fozzard, J. Webb, L. Basler, D. Vogler, A. Will (listed as Williams), J. Hampton, F. Falimer, M. Emory, T. Smith, D. Lenon, H. Clark, M. Grubber, J. Massey, Cook, C. Hilliard, Grant, Bushno, and Somers.

cells each day between 5:45 a.m. and 9:45 p.m.  During this time, they may engage in group activities and discussions, and are permitted to discuss topics that include criminal behavior and groups such as the Taliban or Al-Qaeda (Doc. 1, p. 17).

Plaintiff adheres to the Hanbali school of Islam, and sincerely believes he is required to pray five times daily for about five minutes each time.  These prayers must be offered in congregation with other Muslims.  However, these group prayers among Muslims have been banned in the Marion CMU since approximately 2006 or 2007, with limited exceptions.  The only times that Muslim inmates are permitted to engage in group prayers are during a two-hour period each Friday, during the holy month of Ramadan and the day following Ramadan, and on the Eid-Ul-Adha festival (Doc. 1, p. 18).

This policy prohibiting Muslim group prayers was adopted in 2006 or 2007 by a group of senior officials within the Bureau of Prisons ("BOP"):  Defendants Lappin, Conley, Nalley, Dodrill, Smith, Bair, Kane, Nelson, Schiavone, Cruitt, Falls, Simmons, Capaldo, and Colt (Doc. 1, p. 17).  As a result, all Lieutenants and correctional officers in the CMU were told to issue incident reports when they catch Muslim inmates praying together.  Inmates who are caught in the act are issued a report for participating in an "unauthorized gathering."  *Id*.  When a guard suspects but cannot prove that Muslim inmates are engaging in group prayer, a report is issued for being in an "unauthorized location."  *Id*.

The ban on group prayer does not apply to CMU prisoners of other faiths, who have been allowed to congregate for religious observances and prayers without restriction or the issuance of incident reports (Doc. 1, p. 19).

In August 2013, Defendant Massey, at the direction of Defendant Roloff, wrote an incident report against Plaintiff and another Muslim inmate for engaging in an unauthorized

meeting or gathering (Doc. 1, p. 19). The reports were later administratively expunged. However, Plaintiff claims that all of the named Defendant Correctional Officers have threatened him with disciplinary action if he is caught praying in a group.

In addition to the group prayer ban, Marion CMU inmates are banned from calling the Adhan, or Muslim call-to-prayer (Doc. 1, p. 20). This call is normally announced once during each of the five daily prayers, for 35-40 seconds, loudly enough to alert the faithful that it is time to pray. Calling the Adhan is "obligatory on every Muslim able to do so." *Id*. However, out of respect for other inmates, Muslims at Marion do not call the Adhan in a loud voice during the early morning or late night prayers, and the Adhan in the CMU is "mostly silent." *Id*. The policy that bans inmates from calling the Adhan was "created, approved, and condoned" by Defendants Lappin, Dodrill, Davis, Nalley, Kane, Samuels, Laird, Nelson, Schiavone, Bair, Colt, Capaldo, Simmons, Falls, Smith, Neumann, Kelly, Cardona, Burgess, Cruitt, Roal, Hollingsworth, Walton, Julian, Parent, Sproul, Johnson, Howard, Garcia, Harrison, Roloff, Ormandy, Baney, and Siereveld (Doc. 1, pp. 19-20). Further, during a "town hall" meeting with inmates, Defendants Neumann, Rivas, and Cardona threatened every Muslim CMU inmate with an incident report if they were caught calling the Adhan. *Id*. Plaintiff asserts that all of the Marion Defendants have vigorously enforced this policy, and have threatened him with segregation or an incident report if he calls the Adhan.

Plaintiff contends that these policies violate the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, as well as RFRA and RLUIPA. He further asserts that "all of the defendants intended to inflict emotional distress upon him, and that their actions actually did cause him severe emotional distress" (Doc. 1, p. 21).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

As an initial matter, the complaint does not clearly state when Plaintiff's confinement in the Marion CMU began. The August 2013 incident report is the only specific example he gives of enforcement of the group-prayer ban against him personally. As noted above, the judgment and sentence in Plaintiff's criminal case was not entered until April 15, 2013 (Doc. 55 in *United States v. Carlos E. Almonte*, Case No. 11-cr-132-DRD (D.N.J.)). Therefore, his commitment to the custody of the BOP, and his eventual confinement at Marion, must have occurred after that date.

Plaintiff alleges that the policy banning group prayer was adopted several years before he was convicted or placed in the Marion CMU. Likewise, because several of the officials who created the policy banning the Adhan are alleged by Plaintiff to be retired from their former positions with the BOP or Marion, it is obvious that this policy also was put in place well before Plaintiff's imprisonment.

A *Bivens* claim, like a civil rights action against state officials under 42 U.S.C. § 1983,[6] is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005).

---

[6] A *Bivens* action is the federal equivalent of a § 1983 civil rights action. *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (collecting cases).

The adoption of the policies against congregate prayer and the call to prayer pre-dated Plaintiff's conviction and incarceration, and set the stage for the eventual deprivation of Plaintiff's constitutional rights. However, participation in policy-making actions years before this Plaintiff's incarceration is not sufficient to establish the fault-based personal liability which Plaintiff seeks to impose on many of the named Defendants. Based on Plaintiff's generalized allegations regarding these policies and the lack of specificity regarding the date when Plaintiff's incarceration in the CMU commenced, it is impossible to discern which of the BOP Defendants (if any) took any action to enforce the policies against Plaintiff during the time he has been confined in the CMU. As to the Marion Defendants, Plaintiff has included not only the warden, associate wardens, and CMU management staff, but has also named numerous correctional officers, lieutenants, and counselors who have "threatened" him with disciplinary action if he should violate the policies but who (with two exceptions) have not actually carried out such threats.

Plaintiff's allegations indicate that the threat of disciplinary action has had a chilling effect on his ability to follow the tenets of his faith. This threat arises from certain Marion Defendants' implementation of the policies banning group prayer and the Adhan. Accordingly, Plaintiff shall be allowed to proceed against those Defendants who are currently employed at Marion in policy-making positions and who oversee the CMU, those who have taken specific action to enforce the policies against Plaintiff, and those who would be required to carry out the terms of any injunction to which Plaintiff may be entitled in this matter. All other Defendants shall be dismissed from the action without prejudice at this time.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims, which shall receive further review:

**Count 1:** Unlawful restriction of Plaintiff's right to engage in group prayer and to practice the Adhan (call-to-prayer), in violation of the First Amendment and RFRA, against Defendants Samuels, Walton, Sproul, Johnson, Cardona, Neumann, Burgess, Rivas, Roloff, and Massey;

**Count 2:** Violation of Plaintiff's Fourteenth Amendment right to equal protection, for denying him the right to engage in group prayer with other Muslims when non-Muslim inmates are allowed that privilege, against Defendants Samuels, Walton, Sproul, Johnson, Cardona, Neumann, Burgess, Rivas, Roloff, and Massey.

However, Plaintiff has failed to state a claim upon which relief may be granted on his state law claim for intentional infliction of emotional distress **(Count 3).** He makes a sweeping allegation that "all of the defendants intended to inflict emotional distress upon him" (Doc. 1, p. 21). As noted above, however, the actions engaged in by many of the Defendants took place before Plaintiff became a federal prisoner. These Defendants therefore could not have formed a specific intent to cause emotional distress to Plaintiff at the time they adopted the policies which are the subject of this action. Further, Plaintiff makes no specific factual allegations of extreme or outrageous conduct directed at him personally by any individual Defendant. *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (a defendant may be liable for the tort of intentional infliction of emotional distress "only for acts truly 'outrageous,' that is, an 'unwarranted intrusion ... calculated to cause severe emotional distress to a person of ordinary sensibilities.' " (quoting *Knierim v. Izzo,* 22 Ill.2d 73, 174 N.E.2d 157, 164 (1961) (internal quotations omitted)). Here, Plaintiff's general and conclusory allegations do not distinguish the actions of policy-makers from those of CMU staff or other prison employees, nor do they indicate which Defendants may have interacted with him personally. Thus, the complaint is not

sufficient to state a claim for intentional infliction of emotional distress against any of the named Defendants. Count 3 shall be dismissed without prejudice.

Further, Plaintiff has failed to state a viable claim under RLUIPA **(Count 4)** for the infringements on his religious practices. RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It does not apply to federal prisons. *Id.* at § 2000cc-1. Therefore, Count 4 shall be dismissed with prejudice.

**<u>Pending Motions</u>**

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to the United States Magistrate Judge for further consideration.

Likewise, the motion for preliminary injunction (Doc. 5) shall be referred to the United States Magistrate Judge for further consideration. In that motion, Plaintiff seeks to enjoin the enforcement of the policy banning Muslims from engaging in congregate prayer, based on the recent ruling in *Lindh v. Warden*, Case No. 09-cv-215-JMS-MJD (S.D. Ind.). The Court notes that an evidentiary hearing was recently conducted in this District Court by United States Magistrate Judge Philip M. Frazier in *Chesser v. Walton*, Case No. 12-cv-1198-JPG-PMF, on a motion seeking identical relief, and the motion is still under consideration by the Court. If that motion should be granted, it will render moot Plaintiff's motion for preliminary injunction.

Plaintiff's motion for judicial notice (Doc. 6) is **GRANTED.** The Court is aware of the order issued by the Southern District of Indiana in the *Lindh* case.

Plaintiff's motion for a copy of complaint and all attached exhibits (Doc. 7) is **DENIED.** Copies of court documents are available at a cost of $.50 per page, which must be prepaid. *See* 28 U.S.C. § 1914(b). The fee for one copy of the 23-page complaint (which had no

attached exhibits) is $11.50.  Upon receipt of this payment, the requested copies shall be mailed to Plaintiff.

Plaintiff's motion for a copy of each "executed" and "unexecuted" summons (Doc. 8) is **DENIED AS MOOT.**  No summons has yet been issued or served on any Defendant, and service of process shall be ordered below as to those Defendants remaining in the action.  The Clerk routinely forwards a copy of each issued summons and the return of service to the plaintiff in any action, therefore Plaintiff shall receive these copies when they become available.

**Disposition**

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **LAPPIN, DODRILL, NALLEY, DAVIS, SMITH, KANE, NELSON, LAIRD, SCHIAVONE, BAIR, CRUITT, FALLS, SIMMONS, CAPALDO, COLT, HARRISON, ROAL, HOLLINGSWORTH, PARENT, JULIAN, KELLY, BANEY, ORMANDY, HOWARD, GARCIA, SIEREVELD, LEWIS, MURPHY, EDMISTER, LOCKRIDGE, WELLS, MALCOLM, VAN DYVER, TOLSON, MASH, SIMS, PATTERSON, DELOIA, FONES, DOUGHERTY, FOZZARD, WEBB, BASLER, VOGLER, WILL (listed on the electronic docket as WILLIAMS), HAMPTON, FALIMER, EMORY, SMITH, LENON, CLARK, GRUBBER, COOK, HILLIARD, GRANT, BUSHNO,** and **SOMERS** are **DISMISSED** from this action without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **SAMUELS, WALTON, SPROUL, JOHNSON, CARDONA, NEUMANN, BURGESS, RIVAS, ROLOFF,** and **MASSEY**; the

Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **SAMUELS, WALTON, SPROUL, JOHNSON, CARDONA, NEUMANN, BURGESS, RIVAS, ROLOFF,** and **MASSEY** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[7] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States

---

[7] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 2), and the pending motion for preliminary injunction (Doc. 5).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 3, 2013**

                                                    s/ MICHAEL J. REAGAN
                                                  United States District Judge